n All right, final case of this morning is number 240571, Martin Resource Management versus Federal Insurance Company, and we'll hear from Mr. Post. Good morning, Your Honors, and may it please the Court. The question presented by this case is whether the ERISA trustee's claim for indemnity triggered coverage under a fiduciary liability policy, and that question turns on whether the trustee's claim was for a wrongful act of the insured as it's defined by the policy. Now, Martin Resource Management Corporation, the insured, bargained for enhanced coverage to insure against the risk of fiduciary litigation over its ESOP plan. That's a frequent problem with these sorts of plans, and this Court's decision in the Perez case five years ago illustrates the kinds of hazards that can arise in this sort of ESOP plan. And so Martin was bargaining for insurance coverage to eliminate that risk. And the term wrongful act in this enhanced coverage endorsement is a specially defined term that does not require culpable conduct. Counsel, it seems to me that your characterization of wrongful act is almost relevant act, relevant conduct, that wrongfulness is misleading at least as to some of these wrongful acts. Is that one way to look at this? I think two answers, Your Honor. First, I think that the term wrongful act has to be looked at in the context of these specific definitions in paragraphs C and D that expand it to include fiduciary conduct or settler conduct. With respect to the Court's comment that we're defining it in terms of relevant acts, I think what I would say is really that's the debate the parties have over the meaning of the word for in for a wrongful act, and we define it as a causal effect, a but-for cause. Your interpretation of wrongful act and some plausibility to it is that when you look at C and D under the policy, they're not looking at any kind of breach of fiduciary obligations. It's a definition, and wrongful is the word adjective being defined. So you do seem to be taking a very loose word, misconduct, out of the definition. Well, I think that's right, Your Honor, and I want to acknowledge that and invite the Court to contrast our case to this Court's decision in the Mary Kay case cited in the briefs in 2009. That was a case decided under the standard version of this policy as it existed at that time, and at that time wrongful act was defined only as a breach of fiduciary duty or negligence. And so the whole point of this enhanced endorsement was to broaden that coverage, and I will acknowledge that it creates a certain counterintuitive impression because the definitions of wrongful act now in the enhanced endorsement don't include anything culpable, but that was the whole purpose of expanding the coverage was to provide complete coverage. And so you have definitions that in paragraph C refer to any matters claimed against Martin by reason of its service as a fiduciary, and in D, any acts committed by Martin in its settler capacity with respect to establishing or funding the plan. Those broad definitions, and I acknowledge they're broad because this was enhanced coverage, lead to, in our view, two reasons that this indemnity claim triggered coverage. The first is the broader form of the argument that the act of granting indemnity to the trustee was itself a wrongful act as it is defined in these special definitions of paragraph C and D. Why? Your Honor, because it was the act of a fiduciary or a settler, and that is what paragraph C and D define as the relevant conduct with respect to— Well, how come Judge Barker just missed all these nuances? Well, Your Honor, Judge Barker I think quite understandably was troubled by his impression that there was no allegation of culpable conduct directed at Martin that gave rise to the indemnity obligation. Well, me too, so explain— And I understand the Court's intuition, but again, I think two important distinctions to draw here. The first is that if this were not using the label wrongful act, if it just said covered conduct, I don't think we would struggle as much with the question of whether this conduct that triggered the indemnity fell within paragraphs C and D. But second, and this is the more narrow form of our argument, that when you look at the allegations that gave rise to the indemnity claim by the trustee, they unequivocally alleged conduct by Martin in the underlying litigation that fell within these definitions. That was interesting to me. Why wasn't Martin sued to begin with? Your Honor, I think that's an interesting question, and I don't know the answer. And I will tell the Court that I have asked that question. The answer is not in the record, but I think the answer is inconclusive. We don't know why the plaintiffs chose not to bring the claim against Martin. But the point is that the allegations that are made in that underlying class action complaint explicitly allege that Martin participated with the trustee as a party in interest in undertaking a prohibited transaction that was contrary to ERISA. Let me ask you, Judge Barker makes a very interesting statement in his reasoning, and I'm looking at, for reference, page four and five of the opinion, the district court opinion. And I ask you whether or not you agree with the final conclusion he draws here, whether plaintiffs in the Wilmington cases allege that Martin committed wrongful acts is irrelevant. Martin has not claimed that it was only obligated to defend and indemnify Wilmington if plaintiffs allege that Martin acted wrongfully, and if Martin is obliged to defend and indemnify Wilmington regardless of whether plaintiffs accused Martin of wrongful actions in their underlying claims, then Martin has not established coverage under its agreement with Federal. Do you think that's a fair statement? I don't, Your Honor, and I will say I think that that statement is a bit elliptical because you have these defined terms that Judge Barker is construing. But I understand that passage to say that because the indemnity obligation doesn't depend on culpable conduct, coverage does not arise. And I simply think that's a misreading of the definitions of what is admittedly awkwardly framed as wrongful act in paragraph C and paragraph D of this policy. And I think the important point that I want to make, and it picks up on what Judge Jones was asking about, is that the allegations in that underlying litigation that triggered the indemnity obligations unequivocally alleged conduct by Martin in its settler capacity in establishing and funding the plan. Well, I don't, I thought the whole point was that Martin had used, taken money from the ESOP to borrow, or had borrowed off of the collateral in the ESOP. Well, Your Honor, I'm not sure that I have sufficient command of all of the allegations in that underlying complaint to be certain about this. My understanding of that complaint is it was a standard ESOP plan that Martin loaned money to the plan to acquire shares of Martin from the company and the shareholders. And the allegations at bottom were those were prohibited transactions because the value of the company was artificially inflated and so the defendant couldn't demonstrate that it was a transaction for fair value, which made it a prohibited transaction. Well, how does, I don't see how your subsection D could cover that under any circumstances because it says an error or commission, error or omission committed dot, dot, dot solely in settler capacity with respect to establishing, amending, terminating, or funding a sponsored plan. And that's not what's alleged. Well, Your Honor, I don't agree with that. I think it doesn't limit itself to errors or omissions. It says acts, errors, or omissions. So solely in such settler's capacity with respect to. And that's exactly my point, Your Honor, that those allegations in that underlying litigation were allegations of acts by Martin solely in its capacity as the settler of the plan to establish and fund the plan. That transaction was that event. It wasn't funding the plan. It was trying to fund Martin's stock value. Your Honor, the funding of the plan occurred with the cash transfers that capitalized the plan in order to be able to acquire the shares. I think that's a stretch. I think you've got it backwards, but I'll think about it. Well, I appreciate that, Your Honor. I want to follow on this line of reasoning to make two related points. The first is that the conduct of the settler here is the conduct that caused the claim to arise. Now, I think what the parties have clashed over in this respect is whether this is a claim for a wrongful act as defined in the policy. And whether it's treated as a settler act or a fiduciary act, I think it falls within those broad definitions. The parties disagree over whether that is a claim for a wrongful act. The insurer argues, and I think Judge Barker believed, that unless the claim alleged wrongdoing by Martin, it was not a claim for a wrongful act. We say that because the conduct of Martin as alleged was the cause, the but-for cause of that allegation against the trustee, it is a claim, quote, for a wrongful act. And here's the point that I would like to invite the Court to consider. As I was looking over these authorities before oral argument, I was studying the Supreme Court's decision in the Jefferson County case, which is discussed in the briefs. And I would invite the Court, perhaps, to take a fresh look at that opinion, if you have not, because the dispute in that case was essentially identical to the dispute that's presented here. Five members of the Supreme Court, in a majority opinion, held that a claim was for an act under color of office as a federal officer under the Officer Remutable Statute because the act was caused by the defendant's status as a federal officer. Although the conduct that was in question was not a federal officer act. The conduct was caused by the status of the officer as a federal officer. And the Court said that's enough to say it was for an act under the color of office. The dissent disagreed. The dissent said no, unless the claim was for a federal act, it's not a claim that falls under the Officer Removal Statute. My point here is that's exactly the dispute we have here. We say this is for a wrongful act because the claim against the trustee was caused by, the basis of that claim was, the conduct of Martin in undertaking the transaction. But there is no, that being the case, there is no lawsuit whatever that would be excluded by this language. Well, Your Honor, but. And therefore, no reason, I mean, I think you go back to what you said again of what was claims for any claims in connection with the ESOP, which would have been a lot easier for the insurance company to define. Your Honor, the exclusions to coverage in the policy resolve that parade of horribles that the insurer wants to point out. Because the exclusions exclude any contractual indemnity other than an indemnity that arises in the trust agreement. So this is what we bargained for, is the right for coverage for an indemnity that we gave in the trust agreement. And so that parade of horribles can't arise because other contractual obligations aren't going to fall within that scenario. My point about Jefferson County is just this. It was a 5-4 split. I can read that opinion. I think both opinions have forceful understandings of what the word for meant. But we're dealing with an insurance policy. Provided we have a reasonable interpretation of that policy and that coverage term, we're entitled to coverage. And I respectfully submit that the fact that a 5-4 split on the Supreme Court fractured over this precise kind of question, and our side actually carried the day, is at a minimum enough to establish it's a reasonable interpretation of the policy. I'm happy to answer other questions, but I know that the Court has had a full morning, and you're obviously grappling with these issues, and so I won't belabor my time unless you have other questions. Thank you. Okay, thank you. You have rebuttal time. Mr. Draper. Good morning, Your Honors, and may it please the Court. Tony Draper on behalf of the Appleby Federal Insurance Company. The issue here is not as simple as Mr. Post has tried to articulate it, if you consider the arguments that are raised in their briefs. The situation with the lawsuit was that Wilmington Trust, who is not a party to this action, was appointed in 2012 and 2013 to serve as the trustee of the Martin ESOP that was formed in 2012 and 2013. And as part of that, Martin agreed to contractually indemnify Wilmington for Wilmington Trust's own bad conduct, or wrongful conduct, or actionable conduct. When the ESOP beneficiaries sued Wilmington as trustee, they did not sue Martin. They expressly did not sue Martin. The allegations that are in the underlying complaint don't raise claims against Martin. There was an amended complaint. I forget the paragraph numbers. One of you say there were two paragraphs that added claims specifically against Martin. I think I found which paragraphs those were. Would you at least agree that the amended complaint does make some allegations against Martin? No, Your Honor, not allegations in the sense of causes of action. The way they are set up— But they do allege misconduct or participation in the improper financing that we've been talking about. I beg your pardon? Don't they allege Martin's participation, knowing participation, in the transactions that have led to this litigation? No, Your Honor, I don't believe they do. Okay, well, let us have a look. What paragraphs do you think are relevant? It's in pages 31 and 32 of Martin's brief. The acts that are addressed are background facts that talk about the establishment of the Martin ESOP. And the reason that was important is because Wilmington Trust was being sued for its role in the Martin ESOP. So it's fully expected that the Martin ESOP would be discussed and that Martin's role in the establishment of the trust, the formation of it, whatever other actions it took, including the appointment of Wilmington, might have been discussed. And I think, Your Honor, the allegations that are referenced, that are cited by Martin in support of its arguments, that somehow the ESOP beneficiaries made claims against Martin in their lawsuit only against Wilmington, are pages 7, 8, and 9 of their lead brief. And if we look at those, those are background references to Martin. And when it comes to the actual allegations of culpable conduct, if you look at it, it says they say that Wilmington Trust caused the plan to purchase shares. ERISA prohibits Wilmington Trust from causing certain things. Wilmington received compensation in violation of ERISA. The stock and loan transactions were authorized by Wilmington. Wilmington acted on behalf of the sellers. How would allegations specifically of misconduct on part of Martin change this case? Allegations of misconduct? That complaint that we're talking about actually made allegations. They say it does, but maybe it does, maybe it doesn't. How would that change the analysis under the insurance policy? If I'm understanding your question, even if the ESOP beneficiaries in their lawsuit against Wilmington had made some allegations of wrongful conduct or some other actionable type of behavior as to Martin, it wouldn't change the outcome here at all because Martin was not a party. A fiduciary claim requires, so if I can take one small step back, the insuring clause requires a fiduciary claim to be made against Martin for a wrongful act committed or allegedly committed by Martin. So it's got to be a fiduciary claim for a wrongful act against Martin and by Martin. The lawsuit against Wilmington Trust was not involving Martin as a party, so it could not be a fiduciary claim under the definition and the policy because it was not a demand for monetary or non-monetary relief against Martin, and it was not a proceeding, a civil proceeding commenced against Martin because there was no civil complaint against Martin. So it would make no difference at all because both components of the insuring clause could not be satisfied by reference to the lawsuit in which Wilmington was sued. What we have to look at here, because the difference is this is not as traditional a liability policy coverage dispute that you might see. Typically it is the insured that is being sued. The underlying complaint and maybe the demand letter is tendered to the insurance carrier, so that would be the situation because there would be a civil proceeding against the insured. Here there is no civil proceeding. There is a demand. Can we take a step further back? Does there have to be a complaint filed against Martin in order for this policy to cover? The specific answer is no, and I'll explain why. Because wrongful act, there are two relevant components. Well, there are multiple components of what causes a fiduciary claim. I'm sorry. As fiduciary claim is defined, it requires either a, and it's subpart A of the definition, and fiduciary claim is defined, I think if you look in the record on appeal, 336 and 337 I believe. I will correct that if it's wrong. But fiduciary claim, the first part is there must be a written demand against the insured for monetary relief or non-monetary relief for a wrongful act. Fiduciary claim specifically requires that that written demand be against the insured for a wrongful act seeking monetary or non-monetary relief. So the lawsuit against Wilmington Trust couldn't satisfy that. The other possible relevant aspect of it here is the second part of the definition of fiduciary claim, which involves the commencement of a proceeding by the filing of a civil complaint, which we do not have here either. So neither of the two aspects of fiduciary claim could be satisfied by the beneficiary's lawsuit against only Wilmington Trust. All right. Well, Mr. Post is focusing on subsection C and D of the wrongful act definition. Yes, Your Honor. Neither of those apply, and there are two reasons, addressing both of them separately, Your Honor. Subpart C requires an actual or alleged matter claimed against an insured, and this is critical, solely by reason of their service as a fiduciary of the plan. Okay? So this claim by Wilmington, this demand, and it is a written demand for monetary relief, but the critical point is it's not for a wrongful act by Martin. So it doesn't satisfy subparagraph C of the definition of wrongful act because this claim arises solely because of a contractual obligation and it arises because Wilmington Trust breached its duties or allegedly breached its duties and obligations to the plan beneficiaries under ERISA. There is no wrongful conduct by Martin that led to this. There was no allegation by signing this trust agreement and agreeing to indemnity back in 2012 that that was a wrongful act or some kind of culpable conduct, although we do urge in our briefs that in the underlying motion practiced before the court on the motion to dismiss, we do not believe that the argument that the wrongful act was the signing of the trust agreement and the correlated assent to indemnity was raised as the wrongful act, which is the basis now for their argument. What was the wrongful act in the motions was the dragging in to the demands by Wilmington of the allegations made by the plaintiffs in their lawsuit against Wilmington. So we believe that is waived, but if not, if the court decides it is not, the mere act of signing it at the time could not be the wrongful act because no matter how you parse it, the demand today by Wilmington is based on a lawsuit filed against Wilmington for its own bad conduct and it therefore could not be a matter claimed against Martin solely as a result of its service as a fiduciary of the sponsored plan. So no matter how you parse it, it is not a matter that if it was done, it was done back in 2012 and 2013, so subpart C simply cannot apply because it's not solely by reason of Martin's service. Let me ask you about the indemnity agreement first for me to understand where it is in the various contractual arrangements. According to a letter, I guess, from Wilmington to Martin in 2017, it quotes the indemnification. That's the record citation I found in the briefs. But apparently the original indemnification appears in the original trust agreements. Is that correct? It says pursuant to the terms of 2012, 2013, whatever, engagement, trust agreement. So that's where the indemnification is? That is the allegation. The trust agreement itself, as opposed to the plan instrument by which the plan was established, the indemnity is in the trust agreement, but neither of those two documents are of record. Okay. Well, separate, perhaps significant point, but let me move on from that. Under C of the wrongful act description, which I do find wrongful act to be an unfortunate phrase, you'd probably like it, but nonetheless it doesn't seem to me that C is really talking about wrongfulness in the usual sense. It talks about the services insured solely by reason, well, a claim against insured solely by reason of the insured services of fiduciary of any sponsored plan. It seems to me that this indemnification was agreed to as a result of Martin's role as a fiduciary on the sponsored plan. Tell me why that's not so. It's assuming for the sake of argument, we have assumed for the sake of argument here that it was. Are you fighting that this is even in the record and where it appears and whatever? Yes, Your Honor. We're assuming here that the act of signing it was a fiduciary function. But Martin was acting as a fiduciary under the plan in arranging this indemnification to the trustee who was to operate under the plan. In signing the trust agreement that included the indemnity, we accept for purposes of argument here that it was done in the fiduciary capacity. Okay. If you accept that, how does that fit under C? Well, because the claim is not for signing of the trust or appointing Wilmington or granting the indemnity, and the difference here is important because if the plan beneficiaries had said, for example, you granted this unbounded blanket indemnity to this trustee who just messed up and bad things happened to our assets because of it, and the plan beneficiaries sued Martin for having signed it, having signed the trust agreement or given the indemnity or even paid the indemnity, that's when this provision comes into play because Martin was contractually obligated. It comes into play. Well, that's when subpart C about service as a fiduciary might come into play because back in 2012 when they exercised arguably a fiduciary duty to sign it, there was no allegation of it being wrongful. But where this would come into play, where that would be part of the service as a fiduciary, and for purposes of the wrongful act definition would be if the plan beneficiaries had said, you shouldn't have granted indemnity or paid indemnity to the trustee and were bringing a claim against Martin because of that, that would be a wrongful act within the definition of subpart C. This isn't, excuse me, a component of your answer is to import into subpart C and D to the extent we're talking about fiduciary versus settler the common sense meaning of the word wrongful. And I read C and D not to have the common sense meaning of wrongful, breach of fiduciary duty or whatever else. So give me a response to that. Are you interpreting each of these to require some level of breach or just the category of it has to be a fiduciary act or an act as a settler? We do contend and believe that the correct interpretation of it is that there is still some sort of wrongful conduct,  not wrongful act in the sense of the quote in the policy, but some wrongfulness. More of an error or omission type. Well, I think there's another way to approach this because without a pejorative attachment to wrongfulness, it's matter claimed against Martin, so I'm talking about C, solely by reason of Martin's service as a fiduciary of any sponsored plan. Well, vis-a-vis Wilmington seeking indemnity, Martin is not in a fiduciary capacity. Exactly, exactly. And one of the distinctions here, one of the critical important distinctions is that when you combine it with having to have a fiduciary claim, which is a demand for monetary relief for a wrongful act, in order to satisfy the insuring clause, then so you have to have both of them. So that's what supports the implication that there has to be some sort of erroneous behavior, mistaken behavior or something that caused injury as opposed to just some innocuous act that didn't harm anyone. And critically, one of the most important things here is that it has to be for a wrongful act. And when Martin was here, their argument is that that means but for Martin having signed the trust agreement, there would be no claim against Martin, and so we wouldn't be here, and so therefore it must be covered. That cannot be, under any circumstance, a reasonable interpretation of the policy. And I would point the court for that because it requires the court to change for a wrongful act to something much broader, for or related to or arising from. Okay. Now explain to us why subsection D doesn't apply here. Well, there are a number of reasons why subsection D doesn't apply, Your Honor. First of all, the arguments in the briefing and the case law indicate that the appointment of a fiduciary, the selection of the trustee, I'm sorry, is a fiduciary function. It rests with statute section 1103. So as a fiduciary function, the trust agreement is where Wilmington was appointed as trustee and where the indemnity was granted. So it has to be, it cannot be both. We know that. It cannot be both fiduciary and settlor. So it's settlor capacity. But also very, and I know Your Honor picked up on it earlier, it has to be solely in the capacity, but the key here being that it has also got to be a claim against the insured and its settlor capacity with respect to establishing, amending, terminating, or funding a sponsored plan. ERISA tells us that the plan instrument and the trust agreement are separate things and that the appointment of the trustee is fiduciary in nature and there is nothing about the indemnity obligation or the trust agreement that is solely in the settlor capacity with respect to establishing, amending, terminating, or funding. It's a contractual separate undertaking that involves no misconduct or allegations, lawsuits against Martin of any kind other than the demand itself and the lawsuits against Wilmington, which Martin argues have to be coupled together, even though Martin wasn't sued in those lawsuits, that they have to be coupled together to meet their burden to establish the insuring clause that's been triggered. So it's in our brief, we cite to the Le Chialet decision from 2020. We think that's very significant in the analysis. What Martin wants you to do is read for a wrongful act to also mean concerning a wrongful act or pertaining to a wrongful act. Le Chialet decision tells us that you just cannot do that because for or related to being much broader as applied in the civil officer removal statute, and I see I am now out of time. Okay. Thank you. What's proposed? I'd like to make three broad points in rebuttal. The first, Judge Southwick, is to pick up on the exchange that you had with counsel in which I understood him to make what I believe to be a very important concession, which is that the act of agreeing to the indemnity is conceded to be a fiduciary act. It is a fiduciary function. And the argument that you've heard from counsel is essentially one that tries to resurrect the idea that the conduct of Martin must in some way be culpable, wrongful in the common sense term rather than the technical defined term, and it would read out the coverage for fiduciary conduct or settler conduct. It would nullify the enhanced coverage that we bargained for. Judge Southwick, you asked about the allegations of conduct in the underlying class action complaints. If you look at pages 121 to 23 of the record, you'll see the complaint in this case that cites those allegations that include allegations of prohibited transactions by Martin as a party in interest in those transactions. I think I saw those when I was preparing for this. What I hear in response to that, yes, there are these claims regarding the conduct by Martin or whatever those four letters are in the complaint for Martin, but there's no cause of action against them. They're not a defendant, and he sees that, as he should, as critical. What do you say to that? Well, Your Honor, I would say that that was the second point that I wanted to make in rebuttal. Well, glad to help you along. Because it crystallizes that the real dispute here is about the meaning of the word for, because there's no question that those allegations relate to conduct that was undertaken by Martin in a subtler or fiduciary capacity. So the question then is just the conduct that is the subject of the allegations and the underlying complaints in establishing and funding the plan. And so the question then is, is the claim for that conduct? And that crystallizes exactly the dispute I was discussing at the beginning about Jefferson County. Yes, Your Honor, I didn't mean to interrupt. No, go ahead. I was going to say, your opponent relied upon the claim being, and I specifically asked whether it needed to be in a complaint, and he talks about a claim. I have two letters here, which I assume he's alluding to, the May 1, 2017, and the April 4. And both of these letters are for indemnification. They're letters from Wilmington's counsel for indemnification. It doesn't talk about wrongful conduct, if I'm not mistaken. Is there a distinction between these letters and the claim that you're claiming is made? Well, Your Honor, the claim for which coverage is sought is the monetary demand for indemnity that is made against Martin by the trustee. That's the fiduciary claim. And the question then is, is that a claim for a wrongful act? So you're bootstrapping in the original complaint to the contractual indemnification. Well, that's right. And I want to say, I think that that's not artful advocacy. Remember that paragraph 4E of this policy excludes contractual indemnities except for contractual indemnities undertaken in the plan documents. And so it's exactly why this is, in fact, a covered claim and why that demand for indemnity triggers this coverage. Well, let me ask you a question. If the amended complaint didn't have any allegations against Martin, you'd be out to lunch, would you not? Your Honor, I think that the amended complaint would need to allege conduct that would implicate. . . If it had never used the word Martin. If it had never used the word Martin, if it had no reference to Martin. I think that there's a theoretical debate that the insurance specialist might want to undertake in that context that's over my pay grade about whether you would look at the allegations that were made as the basis for the indemnity or you'd look at the underlying facts, the true facts, and whether that would be a litigating issue. But it's not an issue here. Well, I think it is posed by your argument on Part C, which is that any matter claimed against Martin solely by reason of the insured services of fiduciary under any sponsored plan, and your theory is that because Martin is a fiduciary under a plan and Wilmington is covered by the trust instrument, then C pertains. And, Your Honor, this actually crystallizes the reason that I drew a distinction in my opening argument between a broader and narrower version of the argument, because the narrower version that I've highlighted today, which, by the way, is exactly the argument that was made in the district court proceedings without question, is that at the very least this claim was made based on allegations in the underlying litigation that did implicate Martin's conduct as a settler or a fiduciary. And so to the extent there's a concern about outer boundaries, it's not a concern that's raised in our case. Unless there are any further questions, I appreciate the Court's time. All right. Thank you, sir. You got to one of the three points you wanted to make. That's better than some. Thank you, Your Honor. I think it's a very interesting dispute, and we are in recess until 9 o'clock tomorrow morning.